2005 ME 49

**UNITED STATES of America**

v.

**WATER QUALITY INSURANCE SYNDICATE.**

Supreme Judicial Court of Maine.

Argued: Oct. 20, 2004.

Decided: April 7, 2005.

John H. DeYampert Jr., Trial Attorney (orally), United States Department of Justice, Civil Division, Torts Branch, Washington, DC, David Collins, Asst. U.S. Attorney, District of Maine, Portland, for plaintiff.

Michael Kaplan (orally), Preti Flaherty Beliveau Pachios & Haley, L.L.C., Portland, Brendan E. Zahner, John M. Woods, Thacher, Proffitt & Wood, New York City, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] The United States District Court for the District of Maine (*Hornby, J.*) has submitted certified questions to this Court pursuant to 4 M.R.S.A. § 57 (Supp.2004) and M.R.App. P. 25. The certificate requests that we answer the following questions:

1. Does 24–A M.R.S.A. § 2904 [(2000)] apply to policies other than those defined in 24–A M.R.S.A. § 707 [(2000 & Supp.2004)] as policies of casualty insurance?

2. May an insurance policy appropriately characterized as one of marine insurance as defined in 24–A M.R.S.A. § 708 [(2000)] also be characterized as one of casualty insurance pursuant to 24–A M.R.S.A. §§ 701 & 707 [(2000 & Supp.2004)] for the purpose of application of 24–A M.R.S.A. § 2904?

This case involves the United States government's attempt to reach and apply the proceeds of an insurance policy issued by the Water Quality Insurance Syndicate (WQIS) covering a fishing vessel that sank

off the coast of Maine. After the vessel was lost, the United States government expended sums to recover its fuel supply to prevent environmental damage.

[¶ 2] We answer the federal court's first question in the affirmative and decline to answer the second.

## I. BACKGROUND

[¶ 3] Gulf of Maine Trawlers, Inc. (GMT) operated a fishing trawler by the name of *Jessica Ann*. GMT's sole officer and shareholder, Zenon Gogola, served as captain of the *Jessica Ann*. On August 6, 1999, GMT obtained an insurance policy covering the *Jessica Ann* for any liability under the Oil Pollution Act, 33 U.S.C.A. §§ 2701–2761 (2001 & Supp.2004). WQIS underwrote the policy.

[¶ 4] In the early hours of February 20, 2000, after a night of drinking, Gogola and three crewmen departed Portland on a fishing expedition to Wilkinson Basin. As the ship got underway at approximately 2:00 A.M., Gogola ordered crewman Ken Davis to take the helm. Davis set the ship's course, but did not plot it on a chart or manually take fixes. At about 4:00 A.M., the *Jessica Ann* struck an object in the water, which Davis believed was Alden Rock. The crew abandoned ship at 4:30 A.M. and the vessel sank in about 130 feet of water.

[¶ 5] The United States Coast Guard rescued the crew at about 7:00 A.M., at which time emergency workers gave breath tests to Gogola and Davis. Gogola's blood-alcohol content was 0.11 and Davis's was 0.12. Gogola subsequently pled guilty to operating a commercial fishing vessel in a grossly negligent manner, in violation of 46 U.S.C.A. § 2302(b) (Pamph. 2004) and 33 C.F.R. §§ 95.015(b),

95.050(a) (2004). Davis pled guilty to one count of operating a commercial fishing vessel under the influence of alcohol, in violation of 46 U.S.C.A. § 2302(c) (Pamph. 2004) and 33 C.F.R. §§ 95.015(b), 95.050(b) (2004).[1]

[¶ 6] To prevent environmental damage, the Coast Guard launched an operation to remove the *Jessica Ann's* fuel supply. The removal costs, which totaled $930,510.09, were covered by the Oil Spill Liability Trust Fund pursuant to 33 U.S.C.A. §§ 1321(s), 2712(a)(1)(A) (2001). On January 13, 2003, GMT voluntarily paid the federal government $80,906.21. Two weeks later, the United States sued GMT for the remaining balance of $849,603.88. GMT did not defend the lawsuit. The United States notified WQIS that GMT had been sued and was not planning on defending the suit, but WQIS did not appear to defend the case. On May 22, 2003, the United States District Court for the District of Maine entered a judgment against GMT for the full amount sought, plus costs, interest, and attorney fees.

[¶ 7] The United States filed suit against WQIS, seeking to recover the outstanding balance pursuant to 33 U.S.C.A. § 2715(c) (Supp.2004) and 24–A M.R.S.A. § 2904. The United States argued that 24–A M.R.S.A. § 2904, Maine's "reach and apply" statute, allowed it to recover the unpaid expenses of cleaning up the fuel from the *Jessica Ann*. WQIS argued that the "reach and apply" statute was not available to the United States because the insurance it issued to GMT was not casualty insurance, as defined in the Maine Insurance Code, but was instead marine and transportation insurance. The United States District Court certified the two questions regarding the scope of the

---

**1.** WQIS informed GMT that coverage was excluded because of Gogola's willful misconduct in the events leading to the sinking of the *Jessica Ann*.

"reach and apply" statute to this Court pursuant to 4 M.R.S.A. § 57 and M.R.App. P. 25.

## II. DISCUSSION

 [¶ 8] The first certified question presented to this Court is whether 24–A M.R.S.A. § 2904 applies only to casualty insurance, as defined in 24–A M.R.S.A. § 707. This certified question requires us to interpret Maine statutes. When we construe a statute, we attempt to "give effect to the Legislature's intent." *Ashe v. Enter. Rent–A–Car*, 2003 ME 147, ¶ 7, 838 A.2d 1157, 1159. To determine legislative intent, we begin by determining whether the statute's meaning is plain on its face. *Id.*

 [¶ 9] In the present case, we are asked to construe Maine's "reach and apply" statute, which provides, in relevant part:

Whenever any person, administrator, executor, guardian, recovers a final judgment against any other person for any loss or damage specified in section 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action, in his own name, against the insurer to reach and apply the insurance money, if when the right of action accrued, the judgment debtor was insured against such liability and if before the recovery of the judgment the insurer had had notice of such accident, injury or damage. The insurer shall have the right to invoke the defenses described in this section in the proceedings....

. . . .

No civil action shall be brought against an insurer to reach and apply

such insurance money until 20 days shall have elapsed from the time of the rendition of the final judgment against the judgment debtors.

24–A M.R.S.A. § 2904.[2] This statute does not include the term "casualty insurance." We did, however, hold in an earlier case that section 2904 "is available under any policy of *casualty insurance* and is not confined to automobile liability insurance policies." *Marston v. Merchs. Mut. Ins. Co.*, 319 A.2d 111, 114 (Me.1974) (emphasis added). WQIS argues that we should now construe the term "casualty insurance" employed in *Marston* to be limited to the definition of "casualty insurance" provided in section 707 of the Maine Insurance Code.

[¶ 10] In *Marston*, we did not refer to, cite, or in any way discuss the statutory definition of "casualty insurance" that appears in 24–A M.R.S.A. § 707, though that statute was in effect at the time. *See* P.L. 1969, ch. 132, § 1. Instead we employed the term "casualty insurance" in its common, ordinary meaning, that honors the broad language of section 2904 to reach and apply insurance covering "any loss or damage specified in section 2903," 24–A M.R.S.A. § 2904—i.e., any "accidental loss or damage on account of personal injury or death or on account of accidental damage to property," 24–A M.R.S.A. § 2903 (2000).

[¶ 11] Because we have concluded that the definition of "casualty insurance" provided in section 707 does not limit the circumstances under which an entity may reach and apply an insurance policy pursuant to section 2904, it is immaterial to the pending federal litigation whether a "marine insurance" policy pursuant to 24–A M.R.S.A. § 708 may also be "casualty in-

---

**2.** Section 2904 has a number of exceptions to its applicability, none of which apply in the present case. *See* 24–A M.R.S.A. § 2904(1)–(6) (2000).

surance" pursuant to 24–A M.R.S.A. §§ 701, 707.

The entry is:

Question 1: Yes.

Question 2: We decline to answer.